ROTZIEN, Appellant, v. MERCHANTS' LOAN & TRUST COMPANY, Respondent.

(170 N. W. 128).

(File No. 4394. Opinion filed Dec. 31, 1918).

(1). **Partnership—Partnership Relation, Defined—Oral, Implied Agreement re Intent.**

A copartnership is the relation existing between two or more persons who have combined their property, labor and skill in a business as principals for purpose of joint profit; it is not necessary to that end that written articles should be executed nor, in all cases, that they have an express agreement; but, as between themselves, some agreement, understanding, or conduct indicating mutual intent of all partners to form a copartnership must exist.

(2). **Same—Joint Ownership of Mortgaged Personalty—Joint—Owner's Agreement for Foreclosure on Void Mortgage, Authority—Sufficiency of Evidence—Directing Verdict.**

Where one of two joint owners of mortgaged livestock entered into a "trust conveyance" with first and second mortgagees, the second mortgage being void, and both being overdue, under which agreement said co-owner purported to sell the livestock to a party as trustee, with authority to sell it at either public or private sale and to apply proceeds for the payment of both mortgages in order of priority, the agreement reciting that said co-owner and the other co-owner were copartners, which recital the co-owner executing the agreement protested, declaring there was no partnership, and he had no authority to convey his co-owner's interest; the first mortgage having thereafter been duly foreclosed, whereupon the alleged trustee sold the remainder of the livestock without the knowledge of the other co-owner; held, that the said owners were not copartners; that he who executed said agreement was without authority to dispose of his co-owner's interest; the jury, in a suit by the co-owner against the alleged trustee for conversion, having found for defendant, under instructions which necessarily implied that a partnership did exist; that the verdict was not supported by the evidence, plaintiff's interest having been acquired by bill of sale, and there being no evidence of intent to form a partnership, and verdict should have been directed for plaintiff.

(3). **Same—Conduct and Declaration of Joint Owner, Silence, Whether an Estoppel re Partnership—Contemplated Partnership, Declarations Re, Effect.**

In a suit by one joint owner of livestock against an alleged trustee created by agreement with the other co-owner, under which agreement the trustee sold part of the mortgaged prop-

erty, held, that the statement of one co-owner that he and the other co-owner held lumber interests together and were also going into the horse business as partners, is not evidence of a present partnership; nor was the fact that such co-owner introduced the other to a third party as a partner, there being no disclaimer by the latter of such relationship, sufficient to estop the co-owner to deny existence of the partnership; and, there being no evidence that either ever mentioned formation of a copartnership to the other, or that any party concerned ever acted to his detriment on the strength of the conduct or representations so made said acts and statements fall short of estopping the co-owner from denying the partnership; that there being nothing to call for a disclaimer or denial by appellant co-owners, his mere silence will not work an estoppel.

(4). **Agency—Joint Owners of Mortgaged Personalty—Consenting to Individual Sales, Effect re Co-owners' Contract with Mortgagee.**

The fact that one of two co-owners of mortgaged horses, sold some horses with the co-owner's consent, falls short of showing authority in the co-owner to dispose of the horses under a contract between him and representatives of the mortgagee, for disposal of the property at public or private sale in payment of an alleged mortgage indebtedness, especially in that the co-owner so acting publicly announced at time of the foreclosure sale that the alleged trustee had no right to sell the horses.

(5). **Partnership—Partnership re Third Persons, Not Mislead, Status Defined.**

There can be no partnership as to third persons, when, as between the parties themselves there is no partnership, and third persons have not been misled by concealment of facts or by disceptive appearance.

Appeal from Circuit Court, Pennington County.   Hon. Levi McGee, Judge.

Action by Albert Rotzien, against the Merchants' Loan & Trust Company, a corporation, to recover damages for conversion of personalty.   From a judgment for defendant, and from an order denying a new trial, plaintiff appeals.   Reversed.

*Schrader & Lewis,* for Appellant.

*Buell & Denu,* for Respondent.

(1) To point one of the opinion, Appellant cited:
Grigsby v. Day, 9 S. D. 585.
Respondent cited:
Spaulding v. Stubbings, 86 Wis. 255, 262.

2 To point two, Respondent cited:

20 R. C. L. 803; Spaulding v. Stubbings, 86 Wis. 255, 262.

POLLEY, J.  Plaintiff and one Fienup were the owners of a drove of some 72 head of horses in Pennington county.  Appellant acquired his interest in the horses through a bill of sale from Fienup which conveyed to appellant an undivided one-half interest in said horses.  The conveyance of this interest was by bill of sale.  The property was incumbered by two chattel mortgages, one of which was given to secure an indebtedness of $1,100 and was filed so as to take effect prior to the bill of sale.  It was treated as a first mortgage.  The other mortgage purported to secure an indebtedness of $3,944.65, and was not filed until after the bill of sale took effect.  This second mortgage was void on its face because it did not comply with certain provisions of the statute, and it was claimed by appellant that it was void for the further reason that the amount of indebtedness it purported to secure had, after its execution, been materially increased without the knowledge or consent of the mortgagors.  After both of these mortgages were in default, counsel for the owner of the mortgages procured from Fienup an instrument, designated a "trust conveyance," whereby Fienup purported to sell all of the said horses to respondent as trustee, with authority to such trustee to sell the horses at either public or private sale and to apply the proceeds therefrom to the payment of both of the said mortgages in the order of their priority.  This instrument contains a recital to the effect that appellant and Fienup were copartners, but it is not signed by Fienup with any partnership name but only with his own individual name.  This instrument was executed on the 15th day of May, 1916.  On the 22d day of September, 1916, the respondent, acting for the owner of the $1,100 mortgage, after giving proper foreclosure notice, caused the foreclosure of said mortgage and caused the sale of a sufficient number of horses to satisfy said mortgage.  Of this foreclosure appellant makes no complaint.  Respondent, claiming to act under the authority of the said trust conveyance, then seized and caused the sale of the remainder of said drove of horses.  Appellant was absent from the state at the time of the execution of the said trust conveyance and had no knowledge of the execution thereof until after said sale had been made.  Upon learning what had transpired relative to

,such sale, he commenced this action, charging respondent with the conversion of the horses, and demanding judgment for the value of his interest therein. Verdict and judgment were for respondent, and plaintiff appeals.

As against appellant, respondent justified its seizure and sale of the horses on the sole ground that appellant and Fienup were partners, and that the trust conveyance executed by Fienup was binding upon appellant. Appellant denied that any copartnership ever existed between himself and Fienup, or that Fienup had any authority from him to dispose of or incumber appellant's interest in the horses; his contention being that he and Fienup were the owners, each of an undivided one-half interest in the horses, and that neither of them had any authority to act for the other. Upon this question the trial court charged the jury that, if appellant and the said Fienup were partners in the transaction involved, they should bring in a verdict for the defendant. The court further charged the jury that the burden of proving that the relation of partners did exist between Fienup and appellant devolved upon defendant, and that, unless they found that said partnership did exist, they should proceed to assess appellant's damages and return a verdict for him. Having returned a verdict for respondent, the jury must necessarily, under these instructions, have found that such partnership did exist. Appellant contends that there is no sufficient evidence to support such finding.

[1, 2] A copartnership is the relation that exists between two or more persons, who have combined their property, labor, and skill in an enterprise or business as principals for the purpose of joint profit. Spaulding v. Stubbings, 86 Wis. 255, 56 N. W. 469, 39 Am. St. Rep. 888; 1 Bates, Partnership, § 1; 1 Lind. Partnership, p. 2. It is not necessary, in order to create a copartnership, that the parties have written articles of copartnership, nor, in all cases, that they even have an express agreement to that effect. But, as between themselves, there must be some agreement, understanding, or conduct that indicates a mutual intent on the part of all the partners to form a copartnership. In this case there is no evidence that any such intent ever existed. When appellant acquired his interest, he took it by bill of sale, not to any copartnership, but to himself as an individual, and his

interest was an undivided one-half in the entire drove of horses. This made appellant and Fienup joint owners, but not partners; nor did it authorize either of them to act as agent for the other in the disposition of such horses.

[3] But respondent contends that certain conduct and declarations of appellant and Fienup had been such as to estop them as against third parties to deny the existence of a copartnership. These acts consisted principally in statements and declarations alleged to have been made by Fienup and appellant. Mr. Denu, one of the attorneys for respondent, testified that, when he first met appellant, appellant told him that he (appellant) and Fienup held interest together in some lumber business, and that they were also going into the ranch and horse business as partners. This, however, goes no further than to indicate an intention on the part of appellant to form a copartnership at some future time. Mr. Soule testified that Fienup introduced appellant to him as a partner, and that appellant did not disclaim such relationship. Appellant admitted that at one time there had been some talk between him and Fienup of organizing a corporation; but there is no evidence that either of them ever mentioned the formation of a copartnership to the other. This conduct and these acts come far short of estopping appellant from denying the existence of a partnership. At the time these statements and declarations were made the existence of a partnership was not under consideration, nor were the rights or liabilities of individual partners in the mind of any of the parties concerned. There was nothing to call for a disclaimer or denial by appellant, and mere silence under these circumstances will not work an estoppel. 10 R. C. L. 692.

The only time the question of partnership, or the rights, liabilities, and powers of partners, ever came up for consideration, was when Fienup executed the trust conveyance under which respondent seized and sold the horses. Mr. Denu, who was acting as counsel for respondent, and also for the owner of the said mortgages, prepared said conveyance, and in it recited that appellant and Fienup were partners. When Fienup saw this recital, he at once protested, and told Mr. Denu that he and appellant were not partners, and that he had no authority to convey appellant's interest in the horses. To this protest Mr. Denu replied that it would be all right if they could get appellant's consent to

the conveyance, and accordingly he prepared a written consent and ratification of such sale for appellant to sign; but it was not shown or claimed that such writing ever reached appellant, or that he ever consented to or in any wise ratified such conveyance, or that he had any knowledge thereof, until some two months after the alleged conversion of the horses.

[4] It was shown that Fienup made sales of some of the mortgaged horses, and that to these sales appellant gave his consent. Respondent claims that this fact tends to show that Fienup had authority from appellant to dispose of the horses as he saw fit. Whether such sales were made under authority previously given, or whether the sales had been made without authority and afterward ratified, does not appear, nor is it material. The authorization or ratification of private sales by Fienup from time to time would not authorize the disposition of the entire herd in payment of an alleged indebtedness, a portion of which at least appellant disputed. And in this connection we may add that after the completion of the foreclosure sale, and before the sale under the trust conveyance was commenced, Fienup, in the presence of the attorney and agent of respondent, and in the hearing of prospective purchasers, made a public announcement that the defendant had no right to sell the horses, and that any one purchasing them would do so at his peril.

It is not shown nor claimed that respondent, or either of the parties concerned, ever acted to their detriment on the strength of the conduct or representation made by Fienup and appellant. The only transaction in any wise involving the existence of a copartnership was the procuring of the trust conveyance, and certainly no one was misled by anything that transpired in connection with that transaction. Neither did the owners of the chattel mortgages put themselves in a worse position than they were before. Neither mortgage was canceled. One of them was afterward foreclosed and satisfied, and the other was void from its inception.

[5] We find no fact nor circumstance in the record that should estop appellant from denying the existence of a copartnership between himself and Fienup, or that should be held to create a partnership between them as to third parties. In the language

of Mr. Justice Cooley, in Beecher v. Bush, 45 Mich. 188, 7 N. W. 785, 40 Am. Rep. 465:

"* * * There can be no such thing as a partnership as to third persons, when as between the parties themselves there is no partnership, and the third persons have not been misled by concealment of facts or by deceptive appearances."

There being no evidence to go to the jury upon the question of copartnership, the court should have granted plaintiff's motion to direct a verdict for the plaintiff, for the value of plaintiff's interest in the property sold.

The judgment and order appealed from are reversed.